**SO ORDERED.**

**SIGNED January 27, 2015.**



ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE

---

```
           UNITED STATES BANKRUPTCY COURT
            WESTERN DISTRICT OF LOUISIANA
                LAKE CHARLES DIVISION


IN RE:

PWK TIMBERLAND, LLC                         CASE NO. 13-20242

-----------------------------------------------------------------
                      MEMORANDUM RULING
-----------------------------------------------------------------
```

The present matters before the court are (1) a Motion for Contempt, to Compel, for Sanctions, and to Extend Time (the "Motion to Compel") and (2) a Motion to Traverse Privilege Log and to Compel (the "Motion to Traverse"). These motions were filed by Esther White Goldstein, Daniel Merritt Goldstein, Melissa Catherine Goldstein, Herman Aubrey White, III, Tiffany Leigh White, and Brittany Elisabeth White (the "Movants") in connection with litigation over their proofs of claim. The court took the Motions under advisement to conduct an *in camera* review of the documents reflected on PWK Timberland, Inc.'s privilege log. After reviewing

PWK's privilege log and the documents identified on the privilege log, and after considering the parties' briefs and the relevant authorities, the court rules as follows.

## BACKGROUND

PWK filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Court on March 22, 2013. Movants are six former members of PWK who have exercised their rights under PWK's organizational documents to sell their interests in the company. PWK's Articles of Organization include a put option (the "Put Option") provision that requires the company, upon request by a member, to redeem that member's ownership interest pursuant to the terms of that provision. (Exhibit I to Motion to Traverse at Art. XII, § 2). In April 2009, Movants formally announced their intent to exercise the Put Option provision in PWK's Articles of Organization. Extensive litigation ensued in state court. While the parties' various disputes were not fully resolved prior to PWK's bankruptcy filing, the 14th Judicial District Court entered a judgement providing that January 31, 2011 was the effective date of the sale of Movants' membership interests in PWK. Following the commencement of the bankruptcy case, Movants filed proofs of claim for the amounts they contend are owed under the Put Option provisions, and PWK objected to these claims. The court subsequently entered a scheduling order governing discovery, pre-

trial motions, and setting an evidentiary hearing on PWK's objections. This dispute arises out of the discovery conducted in connection with these contested matters and the court's scheduling order. Specifically, Movants challenge PWK's assertion of the attorney-client privilege and attorney work product exemption, and question the adequacy of its privilege log. The court took the matter under advisement in order to review PWK's privilege log and to review *in camera* the documents PWK withheld as privileged.

## DISCUSSION

**A. MOVANT'S WAIVER ARGUMENTS**

**1. Movants' Status as Former Members and/or Directors of PWK as a Bar to Assertion of the Privilege.**

Movants contend that PWK cannot assert the attorney-client privilege for communications that occurred while they were members or directors of PWK. In 2008, PWK hired A.J. Gray to provide legal advice on PWK's rights and obligations under the Put Option. Movants contend that they were never informed of Mr. Gray's retention, and were not provided with Mr. Gray's legal opinions on the Put Option even though they were paying their proportionate share of Mr. Gray's legal fees. As a result, according Movants, PWK cannot shield Mr. Gray's legal opinions prior to January 31, 2011 by invoking the attorney-client privilege. Alternatively, Movants contend that PWK cannot assert the attorney-client

privilege against H. Aubrey White, III, because he served as a director of PWK prior to January 2011. PWK's Operating Agreement provides that its "Board of Managers/Directors is empowered with the management of the business of the company ...." (Exhibit J to Motion to Traverse at Art. III, § 10). Movants contend that Mr. White should have been a party to privileged communications with A.J. Gray prior to January 31, 2011 given White's position on PWK's Board of Managers/Directors.

At their core, Movants' privilege arguments are grounded on questions of corporate governance and the circumstances under which a party's status *vis-a-vis* the corporation entitles them to pierce the corporation's attorney-client privilege. Federal case law clearly holds that a corporation's attorney-client privilege belongs to the corporation, not to the corporation's officers and directors or shareholders. Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 349 (1985); Upjohn Co. v. United States, 449 U.S. 383 (1981). Accordingly, the fact that Movants were members of PWK prior to January 2011 does not provide them with an independent ground to access PWK's privileged communications because the privilege belongs to PWK, not its members.[1]

---

[1] Courts have generally looked to case law developed in the corporate context when faced with a claim of privilege by an limited liability company ("LLC"). See Montgomery v. Etreppid Technologies, LLC, 548 F.Supp. 2d. 1175 (D. Nev. 2008). Here, PWK

-4-

13-20242 - #428  File 01/27/15  Enter 01/27/15 16:14:11  Main Document  Pg 4 of 16

Courts, however, have crafted a narrow exception that has been used successfully by corporate shareholders in derivative and non-derivative proceedings. This "fiduciary exception" to the corporate attorney-client privilege originated in the seminal Fifth Circuit case of Garner v. Wolfinbarger, 430 F.2d. 1093 (5th Cir. 1970). Garner affirmed the corporation's right to assert the attorney-client privilege against its shareholders. The court, however, crafted an exception to that privilege where a corporation's shareholders sought privileged communications in connection with a derivative action that sought to enforce the rights of the corporation against the corporation's officers and directors. Id. at 1095-96. According to the Garner court, a shareholder in this context could obtain privileged communications through a showing of "good cause." Id. In the intervening years, the Fifth Circuit and other courts have expanded the scope of the Garner exception beyond shareholder derivative actions to a broad

---

is a Louisiana LLC. There is a dearth of Louisiana authority on the contours of the attorney-client privilege held by a Louisiana LLC. However, in at least one case, a Louisiana court's application of the privilege is consistent with federal precedent. Specifically, the court held that a lawyer retained in the formation of a Louisiana LLC did not have an attorney-client relationship with other individual members of the LLC absent an express agreement between that lawyer and the individual members of the LLC. See Williams v. Roberts, 931 So.2d 1217, 1220 (La. App. 3 Cir. 5/31/06). The record here reflects no such express agreement between Mr. Gray and Movants.

range of fiduciary relationships outside the corporate context. See, e.g., Fausek v. White, 965 F.2d. 126 (6th Cir. 1992); In re International Systems & Controls Corp. Sec. Litig., 693 F.2d 1235 (5th Cir. 1982).

While the Movants do not specifically address the applicability of Garner to the present case, their pleadings allege that the actions of PWK's management and non-withdrawing members may violate PWK's Articles of Organization and breach their fiduciary duties. The court, therefore, will address the applicability of Garner as grounds to pierce PWK's attorney-client privilege. Various courts have articulated the factors that courts should consider in determining whether a party has demonstrated "good cause" under Garner. However, courts have generally been reluctant to apply the Garner exception where the parties seeking disclosure are seeking disclosure to benefit their individual interests as opposed to the collective interests of all shareholders or of all members of a organization imbued with similar fiduciary duties. See, e.g., Cox v. Administrator United States Steel & Carnegie, 17 F.3d. 1386, 1416 (11th Cir. 1994). Here, the privileged documents at issue involve legal advice and analysis on the very matters that are in dispute between the parties in the state court actions and this bankruptcy proceeding. While the presence of an adverse interest alone may not defeat the

-6-

Garner exception, the fact that the privileged communications at issue here relate to the present dispute between the LLC and a minority of former LLC members weighs heavily against the appicability of the exception. See Garner, 430 F.2d at 1104 (courts should consider (1) "whether the communication is of advice concerning the litigation itself," and (2) "whether the communication related to past or to prospective actions."); In re LTV Sec. Litig., 89 F.R.D. 595, 608 (N.D. Tex. 1981); In re International Systems and Controls Corp. Sec. Litig., 693 F.2d 1235 (5th Cir. 1982) (holding that once litigation is sufficiently foreseeable so as to invoke work-product protections, the Garner exception is not applicable); Sandberg v. Virginia Bankshares, Inc., 979 F.2d 332, 350 (4th Cir. 1992) (finding the privilege non-assertable because the communication occurred while the entities remained business adversaries before their merger).[2] Considering the nature of the privileged documents, the context in which these documents were created, and the connection between the

---

[2] Movants point out that they did not formally make a demand under the Put Option provisions until 2009. Accordingly, Movants contend that there was no pending dispute in 2008, a period when several of the legal memoranda on the privilege log were authored. However, the court's *in camera* review of the privileged documents show that as early as July 2008 there was a dispute between the parties over the operation of the business, that PWK believed that Movants intended to exercise their rights under the Put Option, and that the parties disputed the requirements of the Put Option provisions.

-7-

documents and the ongoing litigation, the court concludes that Movants cannot pierce PWK's privilege on the basis of their former status as members of PWK or on the grounds of the Garner exception to the attorney-client privilege.

On the other hand, the question of H. Aubrey White's right to privileged communications during his tenure on PWK's Board of Managers/Directors is less clear.  Much of the confusion over the contours of the corporate attorney-client privilege stems from the fact that a corporation can only act through its agents and representatives and, accordingly, can only seek legal advice and services through its officers and directors.  Management's role in obtaining and directing legal services does not, however, mean that the **corporation's** privilege belongs to individual officers and directors. Weintraub, 471 U.S. at 349; In re OPM Leasing Services, Inc., 670 F.2d 383, 386 (2nd Cir. 1982). Nevertheless, there are two lines of cases on whether an officer or director of an LLC can pierce the LLC's attorney-client privilege in litigation with the LLC and other members of the LLC.  The first line of cases views the corporate attorney-client privilege as a "collective" right belonging to the corporate entity **and** its management.  Analogizing to the joint client privilege, these courts conclude that a company cannot assert its attorney-client privilege against dissident officers or directors with respect to communications occurring

-8-

during their tenure.  See Gottlieb v. Wiles, 143 F.R.D. 241 (D. Colo. 1992); Harris v. Wells, 1990 WL 150445, * 3-4 (D. Conn. 1990) (holding that a corporation's directors hold the attorney-client privilege and, therefore, cannot assert the privilege against each other); Glidden Company v. Jandernoa, 173 F.R.D. 459, 473 (W. D. Mich. 1997) (holding that officers and directors of a company have a right to attorney-client communications occurring during their tenure with the company).  In Gottlieb, a company was sued by its former CEO.  According to the court, the former CEO was "squarely within the class of persons who could receive communications...without adversely impacting the privileged or confidential nature of such material."  143 F.R.D. at 247.  The court concluded that the former CEO was a joint client with the company during his tenure and that the company, therefore, could not assert its privilege with respect to documents created during the former CEO's tenure.  Id.

The second line of cases rejects Gottlieb's "collective corporate client" approach to the attorney-client privilege.  See Dexia Credit Local v. Rogan, 231 F.R.D. 268 (N. D. Ill. 2004); Montgomery, 548 F.Supp 2d at 1186; Fitzpatrick v. American International Group, Inc., 272 F.R.D. 100, 107-108 (S. D. N.Y. 2010); Milroy v. Hanson, 875 F.Supp. 646 (D. Neb. 1995); Bushnell v. VIS Corp., 1996 WL 506914, * 8 (N. D. Cal. 1996).  These courts

hold that there is no collective joint client privilege between a company and its management and that the privilege resides solely with the company. Fitzpatrick, 272 F.R.D. at 107-108; Montgomery, 548 F. Supp. 2d at 1186. The company's managers have the authority to participate in privileged communications and to act on those communications solely in their corporate fiduciary capacity. Id. Once officers or directors are no longer in management, and thus are no longer acting in their corporate fiduciary capacity, they are no longer entitled to access privileged communications occurring during their tenure. See Fitzpatrick, 272 F.R.D. at 108 ("Once a director leaves his corporate position...there is no logical reason why at that point he would need, and should be expected, to be able to access or have any control over corporate communications, including documents embodying privileged communications made in the past while he served the corporation."); Milroy, 875 F.Supp. at 650 (dissident director had no right to access privileged communications occurring during his tenure); Montgomery, 548 F.Supp. 2d at 1184 ("A dissident director is by definition not 'management' and, accordingly, has no authority to pierce or otherwise frustrate the attorney-client privilege when such action conflicts with the will of 'management'").

The court finds the Fitzpatrick, Montgomery and Milroy line of cases more consistent with federal precedent on the corporate

-10-

attorney-client privilege as well as the policies underlying the privilege.  Gottlieb's collective corporate client approach to the attorney-client privilege ignores clear federal precedent in Weintraub and Upjohn that the attorney-client privilege resides with the corporation, not its agents.  The Gottlieb line of cases is also fundamentally inconsistent with accepted principles of corporate governance.  As the courts in Fitzpatrick and Montgomery noted, corporate managers receive and act on privileged communications solely in their fiduciary capacities as managers of the company.  Fitzpatrick, 272 F.R.D. at 107; 1187.  Once former managers are no longer acting in their fiduciary capacity, they no longer have the right to access the company's privileged documents because there is no independent attorney-client relationship between a company's lawyers and the individual managers of that company.  See Fitzpatrick, 272 F.R.D. at 107.  Here, allowing Mr. White access to privileged communications that occurred while he was a director of PWK would allow him to use these communications not in his role as a corporate fiduciary, but in his individual capacity to advance personal interests that are adverse to PWK and the non-withdrawing members of the LLC.  Applying Gottlieb here would also give the **non-management** former members of PWK access to PWK's privileged communications to support their individual claims against PWK under its Articles of Organization.  Such a broad

-11-

abrogation of the privilege is inconsistent with <u>Weintraub</u> and <u>Upjohn</u> as well as the policies underlying the corporate attorney-client privilege. In sum, the court denies Movants' request to pierce the privilege based on their status as members or directors of PWK.

**2. Selective Disclosure.**

Movants also contend that one of the items on PWK's privilege log--a July 17, 2008 legal memorandum regarding A. J. Gray's review of the Put Option provisions in PWK's operating agreement--was selectively distributed to one director, King White, and not Aubrey White even though he also was a director. Movants contend that the selective disclosure of this document waived PWK's attorney-client privilege. The court disagrees. Courts have generally held that the transmission of privileged communications within a corporation does not automatically waive the attorney-client relationship. <u>See</u>, <u>e.g.</u>, <u>Bank Brussels Lambert v. Credit Lyonnais</u> (Suisse) S.A., 160 F.R.D. 437, 442 (S.D. N.Y. 1995) ("This follows from the recognition that since the decision-making power of the corporate client may be diffused among several employees, the dissemination of confidential communications to such persons does not defeat the privilege."). Here, King White was a director of PWK at the time the he received the July 2008 legal memorandum. As a member of PWK's board of directors, King White was "empowered with the

-12-

management of the business of the Company...." (Motion to Contravene Privilege at ¶ 43). As a director, King White was in a position to control or take a substantial part in determining PWK's actions in response to the legal advice provided in that memorandum. Moreover, even if Aubrey White was also entitled to review the document as a director of PWK, he lost that authority at the end of his tenure. <u>Fitzpatrick</u>, 272 F.R.D. at 108. Accordingly, distribution of the memorandum to King White, even if not distributed to other directors, did not waive PWK's attorney-client privilege.

**3. The Crime-Fraud Exception.**

Movants also challenge PWK's assertion of the attorney-client privilege under the so-called "crime-fraud" exception to the attorney-client privilege. To invoke this exception to the privilege, the withdrawing members must first make a *prima facie* showing that a crime or fraud has occurred. <u>In re Grand Jury Subpoena</u>, 419 F.3d 329, 336 (5th Cir. 2005). This showing requires more than mere conclusory allegations that a crime or fraud has occurred. <u>Id</u>. The record does not support a *prima facie* case that a crime or fraud has occurred. In their pleadings, Movants concede that they cannot allege fraud without access to the privileged documents, but instead contend that PWK and the non-withdrawing members have violated their duties by seeking to frustrate the

-13-

Movants' rights under the Put Option. The court finds that these allegations, standing alone, do not support a *prima facie* case of a crime or fraud. Moreover, courts have generally held that an *in camera* review of the documents should not be used to "bootstrap" a *prima facie* showing of a crime or fraud. See <u>In re John Doe</u>, 675 F.2d. 482 (2nd Cir. 1982). Here, however, the court's *in camera* review of the privileged documents at issue does not support a *prima facie* showing of a crime or fraud committed by PWK or the non-withdrawing members. Accordingly, the court denies Movants' request to pierce PWK's attorney-client privilege under the crime-fraud exception.

**B. ADEQUACY OF PWK'S PRIVILEGE LOG.**

Movants further challenge the adequacy of PWK's privilege log. This court's April 29, 2013 order granting leave to take the deposition of Samuel Pruitt and ordering the production of documents included requirements for a privilege log of documents withheld on the basis of the attorney-client privilege or attorney work product exemption. Movants are correct that the privilege log produced prior to their Motion to Traverse did not satisfy all of the requirements of the April 29th order. However, the revised privilege log provided in connection with the tender of privileged documents for *in camera* review does satisfy the requirements of that order and is sufficient to identify the grounds for PWK's

-14-

privilege claims.  The privilege log also includes a certification by counsel as to the scope of the production and privilege review. There were undoubtedly delays in the production of a complete log as well as a delay in the resolution of these privilege issues. However, any prejudice can be adequately ameliorated by an appropriate extension of the discovery period.  Given that the court is upholding PWK's privilege claims, it does not appear that this discovery ruling will require the parties to re-open any prior depositions.

**C.   THE COURT'S REVIEW OF THE PRIVILEGED DOCUMENTS.**

At the request of Movants, the court conducted an *in camera* review of all of the documents identified on PWK's privilege log. The court finds that PWK's assertion of the attorney-client privilege and attorney work product exemption is valid for all of the documents on the privilege log with the following exceptions:

(1) Document No. 277:  Identified on the privilege log as an e-mail to Mr. Pruitt re:  form of judgment; and

(2) Document No. 315:  Identified on the privilege log as an e-mail to Mr. Pruitt re:  form of judgment in dividend case.

Document 277 is an e-mail exchange between Mr. Gray and Mr. Terry Johnson, former counsel to Movants.  Although Mr. Pruitt was copied on the e-mail, the document consists solely of a communication with opposing counsel and is, therefore, not privileged.  The same

-15-

reasoning applies to the court's rejection of a privilege claim as to document 315.  PWK shall produce copies of these documents to Movants within seven (7) days of this Memorandum Ruling.  In all other respects, the court affirms PWK's assertion of the attorney-client privilege.

## CONCLUSION

For the foregoing reasons, the court **GRANTS** IN PART and **DENIES** IN PART Movants' (1) Motion to Compel and (2) Motion to Traverse. Document Nos. 277 and 315 shall be produced to movants within seven (7) days of the date of this Memorandum Order.  In all other respects, the Motions are **DENIED**.

###