**SO ORDERED.**

**SIGNED October 14, 2015.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

```
            UNITED STATES BANKRUPTCY COURT
             WESTERN DISTRICT OF LOUISIANA
                  LAKE CHARLES DIVISION

IN RE:

PWK TIMBERLAND, LLC,                       CASE NO. 13-20242

    Chapter 11
```

--------------------------------------------------------------------
### REASONS FOR DECISION
--------------------------------------------------------------------

The present matter before the court is a motion for partial summary judgment filed by Esther White Goldstein, Daniel Merritt Goldstein, Melissa Catherine Goldstein, Herman Aubrey White, III, Tiffany Leigh White, and Brittany Elisabeth White (the "Withdrawing Members"). The Withdrawing Members seek a partial summary judgment on whether a discount for marketability and illiquidity should be applied to the valuation of their interests in PWK Timberland, LLC pursuant to the company's Articles of Organization. The court took the motion under advisement following oral arguments. After

considering the summary judgment record, the parties' arguments, and the relevant authorities, the court rules as follows.

## JURISDICTION

This case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference nor have the parties objected to the court entering a final order with respect to this motion.

## BACKGROUND

This case involves a dispute over the value of the membership interests of certain withdrawing members of a closely-held, family-run limited liability company. PWK was formed on December 15, 2004 as a Louisiana limited liability company and was subsequently merged with PWK Timberland, Corporation. Article XII, Section 2 of PWK's Articles of Organization provides a "Put Option" procedure through which members of the company may demand that the company redeem their membership interest. These provisions contain a lengthy process for determining the value of a membership interest redeemed under the Put Option.

Article XII, Section 2.1 provides that any member of the company "may exercise his or her Put Option under this section by

written notice to the board of directors/managers of the company at its registered office."  The provision further provides that the company shall redeem a tendered interest after providing the remaining members with notice of their right to purchase their *pro rata* share of the tendered membership interests.  For purposes of the present case, the Put Option could be exercised within the "first thirty (30) days during the month of January of the calendar year...2011."  Within fifteen (15) days after the end of this period, the articles require PWK to appoint "a qualified consulting forester and qualified land appraiser to determine the fair market value of the company's land and standing timber."

Article XII, Section 2.2 contains a detailed formula for determining the value of a tendered membership interest.  This provision states that the "agreement price shall be the fair market value of the offered member interest on the date of the tender of member interest pursuant to the Put Option."  This provision then provides a detailed formula for determining the fair market value of the member interest. Section 2.2 further provides a process for resolving disputes between the company and withdrawing members over the value of the tendered shares, including the appointment of additional appraisers to provide opinions on the fair market value of the assets.  If any dispute over the value cannot be resolved by the appraisers appointed by the company and the withdrawing

Page 3

members, a third appraiser is to be appointed and that appraiser's "sole written opinion shall establish the fair market value of the assets." The Withdrawing Members exercised their Put Option rights under Article XII of the Articles of Organization during January 2011. Disputes arose between PWK and the Withdrawing Members over the value of their interest and, accordingly, a third appraiser was ultimately appointed to provide a final determination of the value of their interests. That third appraiser issued an opinion on value, but discounted that value by fifteen percent (15%) on the grounds that the interests were minority interests and illiquid.

PWK filed for relief under Chapter 11 of the Bankruptcy Code on March 22, 2013. The Withdrawing Members subsequently filed proofs of claim in the bankruptcy seeking the value of their interests pursuant to the Articles of Organization as well as claims for damages allegedly resulting from breaches of fiduciary duty, breach of contract, and other claims arising from PWK's conduct in connection with the redemption process. PWK objected to the Withdrawing Members' proofs of claim. PWK also filed a motion to determine the impaired status of claims. This motion has been consolidated with PWK's claims objections and set for hearing starting October 19, 2015. The present motion for partial summary judgment addresses one issue raised in that motion and the claims objections. Specifically, the Withdrawing Members challenge the

applicability of the fifteen percent (15%) discount applied by the third appraiser.  They argue that this discount is barred as a matter of law by the language of Article XII, Section 2.2 of the Articles of Organization and the Louisiana Supreme Court case of <u>Cannon v. Bertrand</u>.

**DISCUSSION**

**A.  Summary Judgment Standard**

Summary judgment is proper if the pleadings, discovery products on file, and affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P 56(a).  The purpose of summary judgment is to pierce the pleadings, to assess the proof, and to determine whether there is a genuine need for trial.  <u>See Matsushita Electric Industries v. Zenith Radio Corp.</u> 475 U.S. 574, 587 (1986).  Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). If the movant bears the burden of persuasion at trial on a claim or defense addressed in the motion for summary judgment, the movant must establish that there is no genuine dispute of material fact as to those claims or defenses.  To satisfy this burden, the movant must come forward with competent summary judgment evidence conclusively establishing that no reasonable trier of fact could find other than for the

moving party.  See Calderone v. United States, 799 F. 2d 254, 259 (6th Cir. 1986).  To avoid summary judgment, the non-movant must then come forward with evidence showing that there is a genuine dispute of material fact.

If the non-moving party has the burden of persuasion at trial with respect to an issue addressed in the motion for summary judgment, the moving party may satisfy its initial burden by either (1) demonstrating affirmatively that there is no triable issue of fact as to each element of the non-moving party's affirmative defenses or claims, or (2) "showing" that the non-moving party cannot present evidence sufficient to satisfy the essential elements of its defenses or claims and thus cannot meet its burden of persuasion at trial.  Celotex Corp., 477 U.S. at 324-326.  If the moving party makes a showing that there is "no evidence" to support the non-moving party's claims or defenses, the non-moving party must come forward with "substantial" evidence showing a genuine dispute of material fact with respect to each essential element of its affirmative defenses or claims. Id. Substantial evidence for purposes of defeating summary judgment is evidence sufficient to support a jury verdict in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-252 (1986). Under this standard, the non-movant cannot rely on unsupported assertions or arguments, but must submit sufficiently probative

evidence supporting its claims or defenses. Even if the burden shifts to the non-moving party, the movant still retains the ultimate burden of persuasion on the motion for summary judgment. Celotex Corp., 477 U.S. at 330-331.

**B. Applicability of The Discount under *Cannon v. Bertrand***

The Withdrawing Members first argue that the Louisiana Supreme Court's decision in Cannon v. Bertrand, 2 So.3d 393 (La. 2009) prohibits the application of a discount for minority or illiquid interests where, as here, those interests are purchased by the company. This argument centers on Article XII, Section 2.2, which provides the formula for calculating the "agreement price" that is to be paid by PWK to redeem a withdrawing member's interest. That provision provides that the "preliminary value" of the agreement price "shall be discounted by fifteen percent (15%) to reflect illiquidity and minority interest, if applicable, to reach the minimum agreement price." Keying off of the "if applicable" language of this provision, the Withdrawing Members contend that a discount cannot be applicable as a matter of law with respect to the valuation of their interests under Cannon because these interests would be purchased by the company and not a third party.

The Withdrawing Members' argument requires a closer examination of Cannon. In Cannon, the plaintiff was a one-third owner in a Louisiana limited liability partnership. Cannon

notified his partners that he intended to withdraw from the partnership and, when the partners were unable to reach agreement on the value of Cannon's one-third share of the partnership, Cannon filed an action to value his share of the partnership under Louisiana Civil Code Articles 2823 et seq. Article 2823 provides that a withdrawing partner "is entitled to an amount equal to the value that the share of the former partner had at the time membership ceased," but does not delineate a method for determining that value. Article 2825 further provides for a judicial determination of that amount and a judgment ordering its payment. In Cannon, the district court arrived at a value for Cannon's interest in the partnership, but applied a thirty-five (35%) discount because his interest was a minority interest. On appeal, the Supreme Court concluded that the district court abused its discretion by applying a minority discount under the facts of the case. According to the court, "minority discounts and other discounts, such as for lack of marketability, may have a place in our law; however, such discounts must be used sparingly and only when the facts support their use." 2 So.3d at 396. The court concluded that a minority discount was unwarranted because Cannon's interest was purchased by the two remaining partners in the partnership. According to the court, these "two partners will not be subject to a lack of control as would a third party, as each has

an equal say in the control of the partnership...."  Id.

The Withdrawing Members' reliance on Cannon is misplaced.  In Cannon, valuation was grounded on a statutory provision that did not define the methodology for valuing a withdrawing member's share of a limited liability partnership.  Rather, the appropriate valuation methodology and the applicability of any discounts were left to the sound discretion of the court in a valuation proceeding under Article 2825 of the Civil Code.  In contrast, PWK's Articles of Organization include a detailed procedure and formula for an appraiser to determine the market value of a withdrawing member's interest in PWK for purposes of redemption.  Unlike Article 2823, PWK's Articles of Organization specifically provide that the valuation of a withdrawing member's interest – for purposes of redemption ***by the company*** – "shall" include a discount for marketability and lack of control if those discounts are "applicable."  Reading Cannon to bar a discount for the tendered shares based on the fact that the shares are to be redeemed by PWK reads the mandatory "shall" language out of the clause and ignores that fact that the purpose of the provision is to calculate the "minimum agreement price" that the ***company*** must pay to redeem the shares.  The Withdrawing Member's argument effectively renders the discount clause of section 2.2 meaningless because it would never

apply.

Nor can the Withdrawing Members rely on the right of first refusal in section 2.2 to argue that the discount clause is only applicable where the non-withdrawing members exercise their right to purchase the shares of the withdrawing members. Section 2.1 provides that, prior to redemption, the non-withdrawing members can exercise their right to purchase the tendered interests of the withdrawing members "at a price greater than or equal to the agreement price." The "agreement price," however, is calculated under section 2.2 without reference to these first refusal rights, and for the specific purpose of determining the company's redemption obligation. Reading these provisions together, section 2.2 should be read to require the flat fifteen percent (15%) discount if (1) the membership interests tendered by a member are minority interests, <u>and</u> (2)the interests suffer from a lack of marketability (i.e. liquidity). In sum, <u>Cannon</u> does not bar the application of a discount as a matter of law in this case.

**C. Whether Application of the Discount is Limited to Interests in Other Entities**

The Withdrawing Members argue alternatively that the reference to a discount in section 2.2 applies only to the valuation of PWK's equity interests in other closely-held companies and not to the overall valuation of a withdrawing member's interest in PWK.

Page 10

Section 2.2 provides:

> Agreement Price.  The agreement price shall be the fair market value of the offered member interests on the date of the tender of member interests pursuant to the Put Option.  The fair market value of the offered member interests will be that price determined by the following formula price.
>
> The formula to determine the minimum agreement price shall be the appraised value of the company's land and standing timber and other operating assets as determined by one or more qualified appraisers plus the total value of the cash, other liquid assets, and publicly traded stocks held by the company at the end of the month in which the Put Option is exercised; plus, if the company is a shareholder in any closely-held company, the value of such equity interests shall be the higher of:  Four times the most recent annual earnings before depreciation, interest and taxes, or the most recent estate tax value; less all current and long term liabilities of the company at the end of the month in which the Put Option is exercised.  This sum total shall be divided by the total number of member interests outstanding to determine the preliminary pro rata per unit value. This preliminary value shall be discounted by fifteen percent (15%) to reflect illiquidity and minority interest, if applicable, to reach the minimum agreement price.

The Withdrawing Members' argument is inconsistent with this text. Section 2.2 addresses how the appraiser is to value the component assets of PWK to arrive at the "preliminary value" of the withdrawing member's interest.  PWK's equity interests in other companies are only one component of that formula, and each of these

components are combined to arrive at a "preliminary value." The last sentence of the provision provides that "*[t]his* preliminary value" is then subject to a discount for marketability and control. Based on the text of the provision, the 15% discount applies to the *sum total* of the components of PWK identified in section 2.2, not solely PWK's equity interest in other companies.

## CONCLUSION

For the foregoing reasons, the court **DENIES** the Withdrawing Members' motion for summary judgment seeking a ruling by the court that the appraiser cannot, as a matter of law, apply a discount for marketability or control to the shares tendered by the Withdrawing Members under the Put Option procedure of PWK's Articles of Organization. A separate order in conformity with the foregoing reasons has this day been entered into the record of this proceeding.

###